PRICE, Judge.
Plaintiff, John Scott, brought this tort action against the City of Shreveport to recover $5,450 as damages and medical expenses for personal injuries which he allegedly received on August 10, 1971, while walking across a viaduct owned and maintained by the City.
Plaintiff alleged that while walking in a northerly direction across what is called the Portland Street viaduct he stepped through a hole in the wooden walkway, sustaining a broken ankle. He further contends that defendant failed to maintain the walkway in a safe condition for pedestrians and knew, or should have known, the dangerous condition of the walkway.
Defendant denied that the accident occurred as contended by plaintiff. In addition defendant contended that the walkway had been maintained in a safe condition for pedestrians and that it did not know of any dangerous condition in the walkway. In the alternative, defendant contended that plaintiff was contributorily negligent in failing to maintain a proper lookout.
The trial court rendered judgment in favor of the defendant dismissing plaintiff’s suit. The trial court concluded that plaintiff had failed to prove his case by a clear preponderance of the evidence, and even if the defendant was negligent, plaintiff was contributorily negligent.
From this adverse judgment, plaintiff has perfected this devolutive appeal.
On this appeal, plaintiff alleges that the trial court erred:
(1). In finding that plaintiff failed to prove the defendant’s negligence was a proximate cause of his injuries by a clear preponderance of the evidence even though the evidence showed that the viaduct was in a poor state of repair;
*722 (2). In finding that plaintiff was con-tributorily negligent in stepping in the hole in the viaduct; and
(3). In failing to find that defendant had a duty to periodically inspect wooden foot bridges and failure to do so constitutes negligence.
The viaduct on which plaintiff alleges he sustained injuries provides access over several railroad tracks running between the streets of Lakeshore and Laurel. It is several hundred feet in length. On the east side of the bridge there is a pedestrian walkway constructed of wood. This walkway is separated from the bridge by a wooden railing and steel girders. Also there is a wooden guard rail on the outside of the walkway. Prior to and at the time of the alleged accident, the top deck of the main walkway was composed of boards, two inches by six inches in size, five feet in length, running perpendicular to the viaduct. Between these boards and the railing separating the auto bridge from the pedestrian walkway, there were three boards, approximately two by six in size and twenty feet in length, which ran parallel with the bridge. Under the top deck there was a subflooring consisting of wooden boards running parallel with the viaduct.
It is plaintiff’s contention that the defect in the viaduct which caused his injury was the absence of a section of the middle parallel board under which there was no sub-flooring, leaving a rectangular hole of approximately six inches in width by two to three feet in length. This hole is alleged to have been located near the south end of the viaduct on the Lakeshore side.
The trial judge in written reasons for judgment discussed the many inconsistencies in the testimony of the plaintiff and his brother who was allegedly with him at the time of the accident and found that the evidence was insufficient to establish an accident happened in the manner contended by plaintiff. We do not find it necessary to resolve the correctness of the trial judge’s findings in this regard as we are of the opinion that assuming the correctness of plaintiff’s contentions, the evidence shows he was guilty of contributory negligence which is a bar to his recovery.
According to the testimony of the plaintiff, he and his brother had walked across the viaduct from the Lakeshore side to Laurel Street at about 6:30 p. m. to visit at a girl’s home. They were returning at about 7:00 p. m. and were nearly across the viaduct when plaintiff allegedly stepped in the hole with his right leg, causing the injury complained of. Plaintiff admits it was still daylight on this August evening. The evidence also shows plaintiff had traveled this viaduct on a number of occasions prior to the date of the accident.
A photograph taken shortly after the accident showing a lengthwise view of the viaduct from the Lakeshore side very clearly depicts the essential factors for resolution of this matter. On this photograph plaintiff marked the spot where he contends a hole existed causing him to fall. The area marked by plaintiff is not-within the normal walkway area of the pedestrian bridge. It is about middle way in the neutral area abutting the traffic portion of the viaduct in which the steel girders of the superstructure are located. The photo shows this area to be covered by long planks running parallel with the viaduct. This surface is rough and uneven and obviously not intended for normal pedestrian use. The regular portion of the pedestrian walkway lying completely outside of the superstructure area is easily discernible as it is floored with crosspieces of two by six lumber laid perpendicular to the vehicular bridge. This walkway is five feet in width and more than adequate to accommodate two or more persons walking side by side.
Plaintiff has offered no reason or shown any necessity for deviating from the clearly defined area intended for foot traffic and walking in an area with a surface obviously more hazardous for safe footing and not intended for pedestrian use. In *723 fact, had a person followed a straight course in either direction from the spot plaintiff has indicated he fell, a steel girder would lie directly in his path. Having chosen to walk in the more hazardous area of the viaduct, plaintiff should have exercised a very careful lookout for his own safety, and had he done so, then he should have seen and avoided the defect described by him, if in fact it existed at that time.
For the foregoing reasons the judgment appealed from is affirmed at his costs.